UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANSA CARVIN,

        Petitioner,

        v.

CATHERINE S. BAUMAN,

        Respondent.[1]

_____/

CASE NO. 4:09-CV-12739
JUDGE MARK A. GOLDSMITH
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    E.   *Jury Instructions (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    F.   *Sufficiency of the Evidence (Claim VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    G.   *Ineffective Assistance of Counsel (Claims II-VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        2.   *Underlying Trial Counsel Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            a. Failure to Present Expert Testimony (Claim II) . . . . . . . . . . . . . . . . . . . . . . . 18
            b. Failure to Challenge Witness's Prior Statement (Claim III) . . . . . . . . . . . . . . . . 20
            c. Failure to Investigate (Claim IV) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            d. Jury Instructions (Claims V & VII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
            e. Failure to Object to Prosecutorial Misconduct (Claim VI) . . . . . . . . . . . . . . . . . 29
        3.   *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    H.   *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    I.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . 33
        1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    J.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

_____

    [1]By Order entered this date, Catherine S. Bauman has been substituted in place of Nick Ludwick as the proper respondent in this action.

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

        1.      Petitioner Mansa Carvin is a state prisoner, currently confined at the Alger Correctional Facility in Munising, Michigan.

        2.      On September 22, 2004, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On October 8, 2004, he was sentenced as a fourth habitual offender to concurrent terms of 264-480 months' imprisonment for the murder conviction and 1-5 years' imprisonment for the felon in possession conviction, and to a mandatory consecutive term of two years' imprisonment for the felony firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE
                THE JURY WAS NOT INSTRUCTED AS TO MANSLAUGHTER AND
                [DEFENDANT] WAS DENIED EFFECTIVE ASSISTANCE OF
                COUNSEL WHERE IT WAS NOT REQUESTED.

        II.     DEFENDANT-APPELLANT'S CONVICTION SHOULD BE REVERSED
                BECAUSE THERE WAS INSUFFICIENT EVIDENCE FOR THE
                CONVICTION OF SECOND-DEGREE MURDER.

Petitioner filed a supplemental *pro se* brief raising the following additional claim:

        THE TRIAL COURT REVERSIBLY ERRED IN DENYING THE DEFENSE
        MOTION FOR A DIRECTED VERDICT BECAUSE THE PROSECUTION
        FAILED TO PRODUCE LEGALLY SUFFICIENT EVIDENCE OF

2

DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT, BOTH IN TERMS OF IDENTIFICATION OF MR. CARVIN AS THE PERPETRATOR AND/OR SUFFICIENT EVIDENCE ON THE ESSENTIAL ELEMENT OF PREMEDITATION TO SUBSTANTIATE FIRST DEGREE MURDER, WHICH COMPROMISED THE JURY'S VERDICT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Carvin*, No. 258796, 2006 WL 120363 (Mich. Ct. App. Jan. 17, 2006) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Carvin*, 475 Mich. 887, 715 N.W.2d 866 (2006).

5.      Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.      APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE A "DEAD BANG WINNER" (INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO PRESENT IDENTIFICATION EXPERT FOR DEFENDANT'S DEFENSE

II.     APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE ABUSE OF DISCRETION BY TRIAL COURT.

III.    APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE, ON DIRECT APPEAL (INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL; WHERE TRIAL COUNSEL FAILED TO INVESTIGATE OR CALL ANY WITNESSES TO SUPPORT DEFENSE THEORY).

IV.     APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE, ON DIRECT APPEAL (INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL; WHERE TRIAL COUNSEL FAILED TO OBJECT TO THE SECOND DEGREE MURDER INSTRUCTION IN A TRIAL FOR FIRST DEGREE MURDER BUT OBJECTED/REJECTED A MANSLAUGHTER INSTRUCTION.

V.      APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE PROSECUTORIAL MISCONDUCT WHERE THE PROSECUTION COMMITTED MISCONDUCT BY MISREPRESENTING THE TESTIMONY OF ITS WITNESS, BOLSTERING THE CREDIBILITY OF

HIS WITNESS' OUT-OF-COURT STATEMENT, MISSTATING THE
TESTIMONY OF ITS WITNESS, AND INJECTING UNFOUNDED AND
PREJUDICIAL INNUENDO INTO DEFENDANT'S TRIAL.

On November 5, 2007, the trial court denied petitioner's motion for relief from judgment.  *See*

*People v. Carvin*, No. 04-001318-01 (Wayne County, Mich., Cir. Ct. Nov. 5, 2007).  The Michigan

Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal

in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to

relief under MCR 6.508(D)."  *People v. Carvin*, 483 Mich. 1108, 766 N.W.2d 823 (2009); *People*

*v. Carvin*, No. 282292 (Mich. Ct. App. Nov. 6, 2008).

      6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on July 2, 2009.  As grounds for the writ of habeas corpus, he raises the five ineffective assistance

of appellate counsel claims that he raised in his motion for relief from judgment (Claims II-VI), the

jury instruction and related ineffective assistance claims he raised on direct appeal (Claim VII), and

the sufficiency of the evidence claim he raised on direct appeal (Claim VIII).  Petitioner also

contends that he is entitled to habeas relief or an evidentiary hearing on his appellate counsel claims

based on the state court's failure to provide him a full and fair hearing (Claim I).

      7.      Respondent filed her answer on January 22, 2010.  She contends that petitioner's

second through sixth claims are barred by petitioner's procedural default in the state courts, and that

the remaining claims are without merit.

      8.      Petitioner filed a reply to respondent's answer on March 4, 2010.

B.     *Factual Background Underlying Petitioner's Conviction*

      Petitioner's conviction arises from the shooting death of Augdon Sinegal in Detroit,

Michigan.  The evidence adduced at trial was accurately summarized in the brief filed by petitioner's

counsel on direct appeal:

It was alleged that on or about August 3, 2003, in front of 13071 Hampshire, a two family residence in the City of Detroit, County of Wayne, State of Michigan, defendant did, while armed with a weapon he was ineligible to possess, with premeditation and deliberation, kill Augdon Sinegal.

Off. Cummings and his partner responded to the location. He noticed several possible items of evidence, and a pool of blood on the floor of a porch and labeled the items. He secured the scene, talked to several people, and notified his superiors. (II, 6-11).

Officer Bunch and his partners responded to the scene, observed complainant lying on the front porch steps of a house approximately a block away from the location, with two persons, later determined to be Mr. Mullen and Mr. Allen, standing over him. He was alive, but there appeared to be gunshot wounds to him. EMS was called. That scene was also secured. (II, 11-16).

Off. Smith, evidence technician, also responded to the scene. He was directed to photograph both scenes, which he identified, the trail of blood, collected potential evidence, including a spent bullet, lighter, head wrap, and cell phone. A rough sketch was also prepared. (II, 17-34).

Mr. Thomas lived next door. On the night in question, he was watching television when he heard gunshots. He ran to the front door and saw defendant fighting with a neighbor. He told them to stop and saw the fight break up, saw deceased run away, saw defendant standing in front of his door, early in the morning when he heard glass breaking. He had also previously seen him sitting on the next door porch with a young lady who used to live there. He admitted he had told the police the person he saw was 5'2"-5'3" tall. He was never asked to view a lineup. (II, 35-50).

Ms. Ritter knew defendant as 'Red'. She had known him on and off since June, 2003. On the day of the incident she had been living at the residence, renting from deceased. She claimed defendant had previously broken out some of her windows because she had male company. When he later offered to fix them, she picked him up, drove him to the hardware store and returned to her house where he repaired them.

After they were fixed, deceased asked her, with defendant standing nearby, about the storm windows. She told defendant to get in the car, but he did not. The conversation heated up and deceased hit defendant in the face, causing him to stumble backwards. She saw defendant reaching for his shorts. She heard deceased say 'if you pull it, you better use it'. She was going to her van when she heard shots. She saw the two fighting on the porch and saw defendant kick deceased when he was on the ground. Deceased got up and ran away. She left the scene, making several stops, before ending up at a hospital, where the police interviewed her. She subsequently testified at an investigative hearing and admitted the police had arrested her boyfriend at the time, Mr. Mason. (II, 51-94).

5

Ms. Thomas had just gotten home from church and was changing when she heard approximately four gunshots. As she was going into her house, she had seen two people whom she later identified as deceased and defendant on the next door porch talking. She heard her husband go to the front door and say 'don't do that'. She also looked out and saw defendant standing over deceased with a gun. He looked in her direction. She saw deceased jumping over a railing and saw defendant walk away. She saw the lady who lived in the house in the middle of the street screaming and hollering and later saw her leave. She had previously seen defendant with the young lady and had even talked to him once. She remembered being interviewed by the police, but did not recall telling them his height. She also never attended a lineup. (II, 96-115).

Sgt. Decker responded to the scene. He received information concerning Ms. Ritter, whom he was able to locate at a hospital, where he interviewed her. He confirmed Mr. Mason had been arrested on outstanding warrants, but also confirmed homicide wanted to talk to Mr. Mason about the shooting. (II, 115-124).

Mr. Lloyd knew defendant as 'Mansa'. During the month of the shooting, defendant had stayed with him. While he had testified previously that he had told defendant he could not live with him anymore, it was a fabrication because he had been arrested and told the police what they wanted to hear to get out of jail. The statement he gave to the police, which included information concerning the incident, was also a fabrication, as was his testimony at an investigative hearing at which he had confirmed his statement to the police. He admitted he had been arrested as a suspect and the police found he owed outstanding tickets. (II, 125-154).

Dr. Lowe, forensic pathologist, reviewed the autopsy report of deceased. It was determined the cause of death was multiple gunshot wounds. It was possible a single bullet had produced several of the wounds. At least one bullet was recovered from the body. There was no evidence of close range firing. (II, 155-165).

Sgt. Anderson, officer-in-charge, responded to the locations and directed the investigation. The lighter recovered at the scene was negative for fingerprints. He talked to Ms. Ritter and continued the investigation. He confirmed Mr. Lloyd was a suspect when he was arrested. As a result of information obtained from Mr. Lloyd, defendant was arrested on January 3, 2004. He noted defendant had a tattoo on his upper arm that said 'Red Rum'. (II, 166-172; III, 5).

Inv. Simon confirmed she interviewed Mr. Lloyd concerning the shooting. The statement she took from him was read to the jury. The interview was not taped. She could not recall whether he was advised of his rights. (II, 177-189).

Mr. Ruffin lived three houses down. He woke up when he heard gunshots and a knock at his front door. When he answered, his cousin was at the door. He went outside, saw Mr. Singal's (Dump) tenant screaming, saw a young man with braided hair walking past him. He was unable to recognize the person. He never saw the deceased again. He agreed he had testified at a previous hearing that the person was deficient, who was shorter than he was (5'1"). (III, 5-13).

Defendant admitted he knew Ms. Ritter. In late July, 2003, he had been at her house for the evening and had taken some narcotics when he left. He denied breaking

out any windows. He did not know where he was when the shooting happened. He admitted he had a tattoo on his arm which read 'Red Rum' and had talked to her many times over the telephone. She knew him as Mansa. He admitted he had stayed with Mr. Lloyd periodically. (III, 14-22).

Def.-Appellant's Br. on Appeal, in *People v. Carvin*, No. 258796 (Mich. Ct. App.), at 2-6. Petitioner was convicted of the lesser included offense of second degree murder, as well as the firearms offenses.

C.    *Procedural Default*

Respondent first contends that petitioner's second through fifth claims are claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. The Court need not resolve this issue, because even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise the underlying claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims

7

where inquiry into the merits mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>        (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>        (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

8

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's

resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Jury Instructions (Claim VII)*

Petitioner first contends that the trial court erred in failing to give an instruction on voluntary manslaughter as a lesser included offense of first degree murder.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

At trial, counsel expressly disavowed any intent to present a manslaughter defense, and petitioner acknowledged that he agreed with this strategy.  *See* Trial Tr., dated 9/22/04, at 22-23. Petitioner's claim that the trial court erred in failing to give a manslaughter instruction notwithstanding this strategic decision is not cognizable on habeas review.  Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction in non-capital cases."  *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001).  As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review."  *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002).  At a minimum, there is no clearly established Supreme Court law which requires the giving of a

requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1).  *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Sufficiency of the Evidence (Claim VIII)*

Petitioner next contends that the evidence was insufficient to prove his guilt of second degree murder beyond a reasonable doubt.  The Court should reject this claim.

1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence.  *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).  However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of

11

the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. "The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868, 878 (1998). In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). As explained above, direct evidence of malice is not necessary; rather, malice may be inferred from evidence that establishes "the intent to

12

do an act that is in obvious disregard of life-endangering consequences." *People v. Aldrich*, 246

Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001) (internal quotations omitted).

    2.    *Analysis*

    Here, there was no question that the victim had died, satisfying the first element of second

degree murder.  Nor does petitioner contend that the victim's death was not caused by his act.

Although petitioner testified that he did not shoot the victim, other witnesses identified him as the

shooter.  It is well-established that a reviewing court, whether on direct appeal or habeas review,

"do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United

States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir.

1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for

appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").

"The fact that the testimony is contradictory does not mean that evidence is insufficient, only that

the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d

1175, 1179 (3d Cir. 1995).  It is the job of the jury, not this Court sitting on habeas review, to

resolve conflicts in the evidence, and this Court must presume that the jury resolved those

conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98

F.3d 402, 408 (9th Cir. 1996).  Thus, the prosecution presented sufficient evidence to prove beyond

a reasonable doubt that petitioner caused the victim's death.

    Rather, petitioner contends that the prosecution presented insufficient evidence that he acted

with malice.  The Michigan Court of Appeals rejected this claim, reasoning:

> When viewing the evidence in the light most favorable to the prosecution, it is
> reasonable for the jury to infer that defendant acted with malice when he shot
> Augdon.  Although Augdon threw the first punch at defendant, defendant's reaction
> to Augdon's attack was to use deadly force.  Augdon uttered the words, "you pull it,

13

> you better use it." As the evidence shows, defendant did just that. It is reasonable
> for a jury to infer that defendant's use of a firearm during the confrontation was an
> act that intentionally set in motion a force likely to cause death or great bodily harm.
> Defendant shot Augdon seven times, and no evidence was presented to show that
> Augdon had a gun or that defendant was fearful that Augdon had a gun.

*Carvin*, 2006 WL 120363, at *3. This determination was reasonable. Petitioner's act of firing a gun

directly at the victim, striking him seven times, was sufficient to show at a minimum that he acted

in obvious disregard of the life endangering consequences of his actions. *See People v. Fields*, No.

266738, 2007 WL 1712619, at *1 (Mich. Ct. App. June 14, 2007) ("Shooting a gun at a person at

such close range clearly indicates an obvious disregard of life-endangering consequences."); *People*

*v. Williams*, No. 232827, 2004 WL 2124705, at *5 (Mich. Ct. App. Sept. 23, 2004) ("Here,

defendant concedes that there was evidence that he fired at a door. Also, there was evidence that

someone had just come to answer the door, that defendant knew that someone had done so, and, in

fact, defendant had yelled for the person to get back before firing the shot at the door. Because the

natural tendency of firing a gun at a door behind which someone is standing is to cause death or

great bodily harm, there was evidence from which a rational factfinder could find beyond a

reasonable doubt that defendant acted with malice.").

Although petitioner and counsel explicitly declined to pursue manslaughter at trial, petitioner

argues that the evidence was insufficient to establish malice because the evidence shows that he

acted under sufficient provocation to negate malice and establish voluntary manslaughter. Under

Michigan law voluntary "[m]anslaughter is murder without malice." *People v. Mendoza*, 468 Mich.

527, 534, 664 N.W.2d 685, 689 (2003). "Murder and manslaughter are both homicides and share

the element of being intentional killings. However, the element of provocation . . . characterizes the

offense of manslaughter [and] separates it from murder." *People v. Pouncey*, 437 Mich. 382, 388,

471 N.W.2d 346, 350 (1991). Thus, "[u]nder Michigan law, 'voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control.'" *Todd v. Stegal*, 40 Fed. Appx. 25, 29 (6th Cir. 2002) (quoting *People v. Fortson*, 202 Mich. App. 13, 19, 507 N.W.2d 763, 767 (1993)). In other words, "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich. at 535-36, 664 N.W.2d at 690. Not every form of provocation, however, will suffice to negate the malice necessary for murder. As the Michigan Supreme Court has explained,

> [t]he provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. . . .
>
> In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control. Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter. The law cannot countenance the loss of self-control; rather, it must encourage people to control their passions.

*Pouncey*, 437 Mich. at 389, 471 N.W.2d at 350; *see also*, *People v. Sullivan*, 231 Mich. App. 510, 518, 586 N.W.2d 578, 582 (1998).

Here, the only evidence of provocation was the testimony of Ritter and petitioner that the victim punched petitioner in the face one time. There was no testimony from either that the victim continued to attack petitioner, or otherwise threatened petitioner beyond this single punch. Given the limited nature of the victim's assault on petitioner, a rational jury could have concluded beyond a reasonable doubt that petitioner did not act with adequate provocation in shooting the victim so as to negate a finding of malice. Accordingly, the Court should conclude that petitioner is not

15

entitled to habeas relief on this claim.

G.    *Ineffective Assistance of Counsel (Claims II-VI)*

The remainder of petitioner's claims attack the adequacy of counsel's representation at trial and on appeal.  Although all of these claims are raised as challenges to the adequacy of appellate counsel, the underlying claim which petitioner contends appellate counsel should have raised on appeal relate to the adequacy of trial counsel's representation.  Because it is not clear whether petitioner is attempting to present independent trial counsel claims as substantive bases for relief (through the assertion of his appellate counsel claim as cause to excuse his default), and because in any event the merit of petitioner's trial counsel claims bears on the adequacy of appellate counsel's representation of petitioner, I will address both the trial counsel and appellate counsel claims separately.[2]

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an

---

[2]In addition to the grounds asserted in Claims II through VI, petitioner also asserts that appellate counsel was ineffective in Claim I.  This claim, however, presents an overview of the appellate counsel claims asserted in Claims II through VI, and does not present a ground for relief distinct from those grounds asserted in Claims II through VI.

ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with

17

the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Underlying Trial Counsel Claims*

a. *Failure to Present Expert Testimony (Claim II)*

Petitioner first contends that trial counsel was ineffective for failing to present expert testimony on the dangers of misidentification. This claim is without merit. Counsel's decision to rely on extensive cross-examination attacking the identification and the basis for it was a reasonable tactical decision. *See Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992); *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 790 (N.D. Ohio 2003), *aff'd*, 413 F.3d 548 (6th Cir. 2005); *Dorch v. Smith*, No. 01-CV-71206, 2002 WL 32598987, at *18 (E.D. Mich. Sept. 11, 2002) (Tarnow, J.). *See generally*, *Perkins v. McKee*, 411 Fed. Appx. 822, 833 (6th Cir. 2011) ("No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment. And there is nothing about this case suggesting that such a witness was imperative here."). Further, petitioner cannot

18

show that he was prejudiced by counsel's failure to call an identification expert, for several reasons.

First, counsel extensively cross-examined the witnesses regarding the bases of their identifications, and this cross-examination provided petitioner "ample opportunity to show he was a victim of misidentification." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1128 (10th Cir. 2006); *see also*, *United States v. Brewer*, 783 F.2d 841, 843 (9th Cir. 1986). As the Sixth Circuit has explained, "the hazards or eyewitness identification are within the ordinary knowledge of most lay jurors," *United States v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001), and in petitioner's case the trial court gave a detailed instruction on evaluating eyewitness identification testimony. *See* Trial Tr., dated 9/22/04, at 73-74. In light of this instruction and counsel's cross-examination of the witnesses, there is not a reasonable probability that the result of the proceeding would have been different had an expert testified.

Second, there is not a reasonable probability that such evidence would even have been admissible. Although there is no *per se* rule excluding expert testimony on the dangers of eyewitness misidentification, the Michigan courts generally permit such testimony only where the expert ties the general principles regarding misidentification to the particular eyewitness identifications involved in the case. *See People v. Kean*, No. 292312, 2011 WL 6004070, at *2-*3 (Mich. Ct. App. Dec. 1, 2011) (discussing *United States v. Brownlee*, 454 F.3d 131, 141 & n.7 (3d Cir. 2006)); *People v. Cervantes*, No. 299491, 2011 WL 5008611, at *2 (Mich. Ct. App. Oct. 20, 2011). Here, petitioner has pointed to no actual expert who could have testified on his behalf, or how such an expert could have related the general factors which cause witnesses to give a mistaken identification to the particular witness identifications in his case. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*,

63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

Third, an eyewitness identification expert would have done nothing to challenge the testimony of Ritter, the principal witness in the case who gave the most damaging testimony identifying petitioner as the shooter. Ritter testified that she had known petitioner for several months and had seen him on several occasions over that time. "The[] dangers [of misidentification] are generally limited to eyewitness identifications of strangers or persons with whom the eyewitness is not very familiar. Although there may be exceptions, for obvious reasons, the identification of a person who is well known to the eyewitness does not give rise to the same risk of misidentification as the identification of a person who is not well known to the eyewitness." *State v. Outing*, 3 A.3d 1, 42 n.8 (Conn. 2010) (Palmer, J., concurring); *see also*, *Jones v. South Carolina*, No. 8:08-cv-1958, 2008 WL 5431161, at *7 (D.S.C. Dec. 31, 2008); *Heath v. United States*, 26 A.3d 266, 282 & n.53 (D.C. 2011). Because Ritter was familiar with petitioner, expert testimony on the dangers of stranger identification testimony would have done nothing to impeach her identification of petitioner as the shooter. In light of these factors, petitioner cannot show that he was prejudiced by counsel's failure to present expert testimony on the dangers of eyewitness identification testimony. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Challenge Witness's Prior Statement (Claim III)

Petitioner next contends that counsel was ineffective for failing to challenge the prosecutor's questioning of Demetrius Lloyd. In a statement to the police, Lloyd indicated that on the night of the shooting petitioner came to his house with blood on his shirt. Lloyd also told the police that petitioner told Lloyd that he had shot the victim over a broken window. At petitioner's first trial,

which ended in a hung jury, Lloyd recanted his statement, testifying that he said what the police wanted him to say because they had threatened to keep him in jail. At the second trial, the prosecutor nevertheless called Lloyd, again to impeach him with his prior statement to the police. The prosecutor also questioned Officer Simmons, eliciting from the officer the contents of Lloyd's statement to the police. Petitioner contends that the prosecutor impermissibly introduced Lloyd's statement to prove the truth of the matter asserted by Lloyd, namely, that petitioner came to his house in a bloody shirt on the night of the murder and admitted to killing the victim, and that counsel should have objected. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for two reasons.

First, petitioner cannot show that counsel was deficient, because Lloyd's prior inconsistent statement was admissible at trial. Although Lloyd initially gave an unsworn statement to the police, he later reaffirmed his statement under oath pursuant to an investigative subpoena. *See* Trial Tr., dated 9/21/04. Because this statement was given under oath and was inconsistent with Lloyd's trial testimony, it was admissible as substantive evidence under Rule 801(d)(1)(A). *See People v. Thomas*, No. 258394, 2007 WL 189347, at *2 (Mich. Ct. App. Jan. 25, 2007) (prior sworn statement given in response to investigative subpoena admissible as substantive evidence when witness gives contrary testimony at trial); *People v. White*, No. 249210, 2004 WL 2624722, at *3-*4 (Mich. Ct. App. Nov. 18, 2004) (same); *People v. Cooper*, No. 240830, 2003 WL 22339473, at *8 (Mich. Ct. App. Oct. 14, 2003) (same); MICH. R. EVID. 801(d)(1)(A) ("A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding."). Further, because

21

Lloyd was present at trial and subject to cross-examination, the introduction of his prior statement raised no problem under the Confrontation Clause. *See California v. Green*, 399 U.S. 149, 164 (1970).

Second, even assuming that the examination of Lloyd about his prior statement and the testimony from Officer Simmons regarding the statement were improper, there is not a reasonable probability that the result of the proceeding would have been different had this testimony not been introduced. The principal issue at trial was petitioner's identity as the shooter. Regardless of Lloyd's statement to the police, there was abundant evidence at trial that petitioner was the shooter. Several witnesses identified petitioner at trial. Most importantly Ritter, who knew petitioner and who witnessed the entire episode, identified petitioner as the shooter, and although defense counsel attempted to impeach her credibility with some inconsistent statements, her identification of petitioner was not challenged on cross-examination. In light of this strong identification testimony, petitioner cannot show a reasonable probability that the result of the proceeding would have been different even if Lloyd's prior statement had not been introduced. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Investigate (Claim IV)

Petitioner next contends that his trial counsel was ineffective for failing to properly investigate the case. Specifically, petitioner contends that counsel should have interviewed and called Sylvia Moore, Richard Mullen, and Sunni Thompson as witnesses. Petitioner contends that Moore, who was Ritter's sister, would have testified that Ritter indicated that "her boyfriend" had shot the victim. Petitioner contends that Ritter's boyfriend was Christopher Mason. Petitioner further contends that Mullen gave a description of the shooter which did not match petitioner.

22

Finally, petitioner contends that Thompson would have testified that he heard banging on his door, and heard someone say "help me they set me up" or "they were setting him up." Petitioner contends that this testimony, together with the testimony of Moore, would have supported his defense that Mason shot the victim and that Mason and Ritter were framing him for the murder because he had stolen drugs from Ritter. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Similarly, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Here, petitioner has provided no affidavits or other evidence indicating that these witnesses would have testified on his behalf, or providing any detail as to what their testimony would have been.

Further, the evidence petitioner does have does not suggest that the outcome of the proceeding would have been different had counsel interviewed and called these witnesses at trial. In his statement to the police, upon which petitioner relies, Thompson merely stated that the man

23

who was shot banged on his door and said either "they set me up" or "they were setting me up."  The victim, however, did not name his attacker.  The victim's hearsay statement, even if it would have been admissible as a dying declaration as petitioner contends, neither exculpates petitioner nor inculpates another in the crime.  The "they" in the statement could as easily mean petitioner and Ritter as it could mean Mason and Ritter, or any other group of people.  Further, petitioner provides nothing to believe that Mullen would have testified favorably to him.  Petitioner contends only that Mullen identified the man fleeing as having a dark complexion, whereas he had a light complexion.  However, petitioner does not contend that Mullen either identified someone else or failed to identify him as the shooter.  And given that the crime occurred in the evening hours, Mullen's statement regarding the complexion of the shooter is only marginally probative at best.  In light of the other positive identifications, particularly that of Ritter who knew petitioner, petitioner has failed to show a reasonable probability that the result of the proceeding would have been different had counsel presented the purported testimony of Thompson and Mullen.

Finally, petitioner cannot show that counsel was ineffective for failing to present the testimony of Moore.  Again, petitioner has failed to present any evidence that Moore would have testified on his behalf at trial.  More fundamentally, however, even if Moore had been called, her testimony regarding Ritter's statement would have been inadmissible at trial.  Petitioner would have sought to introduce Moore's testimony regarding Ritter's statement that her boyfriend did the shooting to prove the truth of the matter asserted, that is, to prove that Ritter's boyfriend in fact shot the victim.  The testimony would have thus been inadmissible hearsay.  *See* MICH. R. EVID. 801-802.  Petitioner contends that this testimony would have been admissible as a present sense impression under Rule 803(1), but this argument is mistaken.  The present sense impression exception to the

24

hearsay rule renders admissible an otherwise hearsay statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." MICH. R. EVID. 803(1). "The admission of hearsay evidence as a present sense impression requires satisfaction of three conditions: (1) the statement must provide an explanation or description of the perceived event, (2) the declarant must personally perceive the event, and (3) the explanation or description must be 'substantially contemporaneous' with the event." *People v. Hendrickson*, 459 Mich. 229, 236, 586 N.W.2d 906, 908 (1998). Here, there is no indication that Ritter's purported statement to Moore was substantially contemporaneous with the shooting. Finally, petitioner cannot show that he was prejudiced by counsel's failure to call Moore as a witness because Ritter's initial identification of the shooter as "her boyfriend" was placed before the jury. During opening statement, defense counsel informed the jury that it would hear evidence that Ritter "told her sister that her boyfriend – who we maintain is Mr. Mason – and he's the one who did the shooting." Trial Tr., dated 9/20/04, at 191-92. During cross-examination of Ritter, counsel elicited from Ritter that she had indicated in her investigative subpoena statement that "her boyfriend" had shot the victim. *See id*., dated 9/21/04, at 93. And counsel argued this point during closing argument. *See id*., dated 9/22/04, at 52. Because this information was already before the jury, there is not a reasonable probability that the result of the trial would have been different had Moore testified. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Jury Instructions (Claims V & VII)

Petitioner next contends that counsel was ineffective in connection with the jury instructions. Specifically, petitioner contends that counsel was ineffective for simultaneously requesting an

instruction on second degree murder as a lesser included offense but not requesting an instruction on the lesser included offense of voluntary manslaughter. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

With respect to the manslaughter instruction, the Michigan Court of Appeals rejected petitioner's ineffective assistance claim, concluding that "[t]he evidence shows trial counsel's failure to request a manslaughter instruction was trial strategy." *Carvin*, 2006 WL 120363, at *1. The court explained that the defense theory was lack of presence and misidentification, and reasoned that "[w]hile it is possible to present inconsistent defenses, such as lack of presence and manslaughter, the decision to do so is trial strategy." *Id.* The court of appeals further observed that counsel clearly indicated on the record that it was his strategy not to pursue manslaughter, and that petitioner approved of this strategy. *See id.* at *2; *see also*, Trial Tr., dated 9/22/04, at 22-23. The court therefore concluded that petitioner's counsel was not ineffective. This determination was reasonable.

Decisions about what defenses to pursue or not pursue are "[a]mong the 'virtually unchallengeable' tactical decision left to the judgment of trial counsel." *Gluzman v. United States*, 124 F. Supp. 2d 171, 174 (S.D.N.Y. 2000). As a review of the trial testimony demonstrates, counsel faced a daunting task in representing petitioner. Keeping in mind the United States Supreme Court's admonition that, "[t]o counteract the natural tendency to fault an unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689); *see also*, *Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) ("[T]he mere fact that a defendant chooses one of two

26

available defenses cannot establish ineffective assistance of counsel, even if the defendant makes a bad choice."). "Simply because counsel was unsuccessful does not make him ineffective for Sixth Amendment purposes." *Mayes v. United States*, 93 F. Supp. 2d 882, 891 (E.D. Tenn. 2000).

It may be that, as petitioner argues, the mistaken identification defense advanced by counsel was untenable, but it was not wholly inapt. While a number of witnesses indirectly identified petitioner as the shooter, only Ritter directly testified that petitioner was the shooter and counsel pursued a reasonable strategy of attempting to show that she was protecting her boyfriend, Mason, who was the real shooter. Further, in light of his acquiescence in this strategy and his testimony at trial, it is clear that petitioner was adamant in denying his participation in the shooting. As explained in *Strickland*, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. "Many courts have concluded that a decision not to present inconsistent defenses cannot be condemned as ineffective." *Wilson v. United States*, 414 F.3d 829, 831 (7th Cir. 2005) (citing cases); *see Jackson v. Shanks*, 143 F.3d 1313, 1326 (10th Cir. 1998) ("Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance."). Pursuing a defense theory of manslaughter would have been inconsistent with petitioner's testimony that he was simply not involved in the shooting. Thus, the Michigan Court of Appeals did not unreasonably apply *Strickland* in concluding that counsel's strategy was reasonable.

Nor can petitioner show that counsel was ineffective for failing to object to the giving of a second degree murder instruction. Petitioner essentially argues that by foregoing a manslaughter instruction, counsel was opting for an all-or-nothing approach, and that this all-or-nothing approach was rendered ineffective by allowing the jury to compromise on a second degree murder verdict.

27

However, the record does not support petitioner's claim that counsel adopted an all-or-nothing approach. Rather, as explained above, the record shows that counsel chose not to pursue a manslaughter defense that would have been inconsistent with petitioner's defense of misidentification, a defense based on petitioner's own insistence that he did not shoot the victim. The only difference between first and second degree murder is the additional element of premeditation; counsel did not argue at any point that the facts showed only second degree, rather than first degree, murder. Rather, counsel's entire argument was consistent with the defense that petitioner simply did not shoot the victim. Had counsel chosen to pursue a manslaughter defense, however, he would have had to argue to the jury that the facts showed the perpetrator acted in the heat of passion under an adequate provocation. While counsel could theoretically have argued both that the perpetrator had done so and that petitioner was not that perpetrator, he could have also reasonably concluded that the jury would view such a defense as essentially an admission by petitioner that petitioner shot the victim. Thus, allowing a manslaughter instruction would have presented the jury with an inconsistent defense that a second degree murder instruction did not present. Thus, counsel cannot be deemed ineffective for allowing a second degree murder instruction but eschewing a manslaughter instruction.[3] Accordingly, the Court should conclude that

---

[3]Further, even had counsel objected to a second degree murder instruction, there is nothing to suggest that the prosecutor would have acceded to this objection. It is well established that the prosecution, as well as the defendant, can request an instruction on a necessarily included lesser offense that is supported by the evidence. *See People v. Burns*, 250 Mich. App. 436, 441, 647 N.W.2d 515, 518 (2002); *People v. Torres*, 222 Mich. App. 411, 416, 564 N.W.2d 149, 153 (1997); *People v. King*, 98 Mich. App. 146, 153, 296 N.W.2d 211, 214 (1980) ("The prosecution, as well as the defendant, has the option of precluding 'all or nothing' verdict choices[.]"). And it is equally well established that a trial court errs in failing to give an instruction on a necessarily included offense supported by the evidence that has been requested by a party. *See People v. Cornell*, 466 Mich. 335, 357, 646 N.W.2d 127, 139 (2002). Petitioner has offered no reason to believe that the prosecution would not have requested an instruction on second degree murder even had counsel objected to the giving of such an instruction.

28

petitioner is not entitled to habeas relief on this claim.

### e. Failure to Object to Prosecutorial Misconduct (Claim VI)

Petitioner next contends that trial counsel was ineffective for failing to object to prosecutorial misconduct at trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner first contends that the prosecutor committed misconduct by mischaracterizing the evidence, and that counsel should have objected to these mischaracterizations. However, because each of the prosecutor's comments was a permissible one based on the evidence at trial and fair inferences drawn from that evidence, petitioner cannot show that counsel was ineffective for failing to object. For example, petitioner contends that the prosecutor committed misconduct by arguing during closing argument that Mr. Thomas's identification was credible because petitioner "walk[ed] right in front of his house" and "look[ed] him square in the eyes, and Mr. Thomas has plenty of time to see and remember that face." Trial Tr., dated 9/22/04, at 40. While it is true that Mr. Thomas did not directly testify that petitioner "looked him square in the eyes," he did testify that petitioner stood right in front of his door, and that he talked to petitioner. *See id.*, dated 9/21/04, at 38-39. The prosecutor's comment was thus a fair inference from Mr. Thomas's testimony. *See Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence).

Petitioner also contends that the prosecutor mischaracterized the evidence when he stated that, other than with respect to the perpetrator's height, Mr. Thomas, Ms. Thomas, and Ritter all

agreed on the description of the perpetrator, including what he was wearing.  *See* Trial Tr., dated 9/22/04, at 42.  Both Mr. Thomas and Ritter testified that petitioner was wearing dark shorts, and all three witnesses testified that petitioner had his hair in braids.  *See* Trial Tr., dated 9/21/04, at 40, 77-78, 103.  Ms. Thomas could not recall what petitioner was wearing, *see id*. at 103, and Mr. Thomas could not recall the color of the shirt, but did not think it was white, *see id*. at 40, 50, while Ritter testified that the shirt was white, *see id*. at 77.  Thus, the prosecutor was partially inaccurate in stating that the descriptions were entirely consistent between the three witnesses.  However, given that the descriptions were mostly consistent, the prosecutor's "misstatement has earmarks of inadvertent mistake, not misconduct."  *United States v. Carillo*, 16 F.3d 1046, 1050 (9th Cir. 1994).  Further, the jury was properly instructed that it was the sole judge of the facts, and that the arguments of counsel were not evidence, limiting the prejudicial impact of the prosecutor's statements.  *See id*. at 1051.  In light of the court's instructions, the similarities that did exist between the descriptions, and the certainty of the witnesses' identifications, petitioner cannot show that he was denied a fair trial by the prosecutor's misstatement, and thus he cannot show that he was prejudiced by counsel's failure to object.

Finally, petitioner contends that the prosecution impermissibly vouched for the credibility of Lloyd's sworn statement to the police and denigrated his trial testimony.  Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury."  *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*,

*United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[4]  Here, the prosecutor argued that Lloyd's sworn statement in response to the investigative subpoena was more credible because it was given under oath and closer in time to the events, and not given at a time when he had to look his friend in the eye at trial.  *See* Trial Tr., dated 9/22/04, at 59.  This comment neither indicated a personal belief in Lloyd's statement to the police nor suggested that facts not in the record supported Lloyd's statement to the police.  Rather, the prosecutor merely argued to the jury that there was a plausible, common sense explanation for the change in Lloyd's testimony and a reason for the jury to credit his earlier sworn statement to the police over his trial testimony.  This did not constitute impermissible vouching, and thus petitioner cannot show that counsel was ineffective for failing to object to this comment.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim based on counsel's failure to object to the prosecutor's comments.

      3.    *Appellate Counsel*

      Petitioner also contends that appellate counsel was ineffective for failing to raise each of these ineffective assistance of trial counsel claims on direct appeal.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      In evaluating the performance of appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring

---

    [4]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering."  *See Francis*, 170 F.3d at 551.

a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*. As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

Here, counsel raised two significant issues on direct appeal, including one of the ineffective assistance of trial counsel claims petitioner presents here. Petitioner has not shown that the claims he presents here are clearly stronger that the claims raised by counsel on direct appeal. Further, as explained above, petitioner has failed to show that any of his claims have merit, and thus he cannot establish a reasonable probability that his claims would have succeeded on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his appellate counsel claim.

## H.    *Evidentiary Hearing*

Petitioner also seeks an evidentiary hearing to develop evidence in support of his ineffective assistance of counsel claims. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) is a hearing is permitted under 28 U.S.C. § 2254(e)(2). In deciding whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing

32

would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963).  As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted).

Here, petitioner cannot establish that an evidentiary hearing would have the potential to advance his claims.  Petitioner contends that an evidentiary hearing is necessary to explore the bases of trial and appellate counsel's decisions.  However, the basis of trial counsel's decision with respect to the manslaughter instruction issue is apparent on the record, and the remainder of petitioner's ineffective assistance claims fail because he cannot show prejudice, a conclusion apparent from the record that requires no further factual development.  Accordingly, the Court should conclude that petitioner is not entitled to an evidentiary hearing.

I.      *Recommendation Regarding Certificate of Appealability*

      1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge

issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a

34

certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of

Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not

issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory

committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either

grant or deny the certificate of appealability at the time of its final adverse order, I include a

recommendation regarding the certificate of appealability issue here.

> 2.     *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the

Court should also conclude that petitioner is not entitled to a certificate of appealability.  It is clear

that a trial court's failure to instruct on a lesser offense in a non-capital cause does not raise a federal

constitutional claim cognizable on habeas review, and thus the resolution of this claim is not

reasonably debatable.  Further, because a number of witnesses identified petitioner as the shooter,

and the Court must presume that the jury resolved any credibility issues in favor of the prosecution,

the resolution of petitioner's sufficiency of the evidence claims is not reasonably debatable.  As

explained above, petitioner cannot show that he was prejudiced by counsel's failure to present an

identification expert or other witnesses, Lloyd's prior statement was admissible as substantive

evidence, counsel chose a reasonable strategy based on petitioner's own testimony in declining to

pursue a manslaughter instruction, and the prosecutor did not commit misconduct, and thus the

resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable.

Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

J.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        36

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/4/12

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on January 4, 2012.

s/Eddrey Butts
Case Manager